## GERBER v. SCHOFIELD, City Director of Public Safety.
### No. 5841.

District Court, E. D. Pennsylvania.
April 22, 1930.

A. J. Nydick and David Wallerstein, both of Philadelphia, Pa., for plaintiff.

Augustus Trask Ashton and G. Coe Farrier, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.

The motion originally made by the plaintiff for a preliminary injunction and an ad interim restraining order has been withdrawn.

Underlying the present motion is a flat challenge of the bill on the broad ground, inter alia, that it discloses no cause of action. The bill itself has as its objective a writ of injunction, directed to the police department of the city of Philadelphia, restraining its officers (as the defendants view it) from enforcing the provisions of the state law, known as the Snyder Act (Pa. St. Supp. 1928 §§ 14098a—1 et seq. and 14098c—1 et seq.) to enforce the provisions of the Eighteenth Amendment. The motion is met at the threshhold with the criticism that the objections urged to the bill raise questions which cannot be determined now, but can only be raised by answer. This is because the grounds of objection to the bill cannot be made to appear without bringing into the case the provisions of the Snyder Act, and the motion becomes in consequence a speaking demurrer. This is true of some of the specific grounds for the motion. The bill, however, asks to have certain impending acts restrained. These are either individual or official acts. If they are individual, there are no averments which would confer equitable jurisdiction; if they are official, there is written into them the law by authority of which they are justified, if lawful. Of this the court takes judicial notice. This bill either charges acts officially done or discloses no cause of action. It clearly avers official acts, and the law of the office is part of the averments of the bill, whether expressed or not. The bill is in effect one to restrain state officers from enforcing state laws.

This brings us to face the precise question which the bill is framed to raise. It is whether one who holds a permit to manufacture "articles" under the provisions of the National Prohibition Act is immune from the operation of the state laws, if the latter make offenses of what the former does not. In any discussion a beginning must be found in something upon which the disputants are agreed. We assume an agreement upon the proposition that the United States and a state are each sovereigns within their respective domains, and that neither may incroach on the domain of the other except as the Constitution may permit. Under the Eighteenth Amendment, however, we have constituted for the operation of laws a field which is thereafter common to both sovereigns. Such common field (although such is not here the case) might be territorial, for which class of cases we have many analogues which have settled the law for us. The power of each of two sovereigns to legislate for a common field is just as absolute as if it were the only sovereign concerned. In this sense there can be no conflict. The physical truth none the less holds good that two things cannot occupy the same space at one and the same time, and hence there may be conflict or danger of it between not the different laws but between the respective officers who are seeking to enforce each a different law. Such conflicts when they arise are dealt with under the well-established principles of comity. There is no averment of any such conflict here, so we pass by this question. There is no difference in principle between territorial and other common fields of legislation. Each sovereign acts as if the other did not share the power to act. Such would be the case between two sovereigns which had no relations with each other except international ones and a common domain. The relation between the United States and each individual state is however unique. The states by the constitutional compact have ceded to the United States by the same compact has limited itself to the domain so surrendered to it, and has pledged itself not to exercise its sovereign powers within the domain retained by the states. Within the domain thus ceded to it the United States is necessarily supreme and the laws of the State otherwise sovereign must yield to the laws of the United States. When, therefore, the United States legislates

on subjects thus within its special domain, all state laws on the same subject are superseded. The Eighteenth Amendment is again in this respect itself unique. There has been no cession by the state of dominion over this subject of legislation. All the powers which the states before had to legislate remain unimpaired and in full vitality. The only change introduced is that the United States may likewise legislate where before it could not, and the United States expressly concedes the "concurrent power" of each state to legislate as fully as it might before have done. Thus the United States and the states may each legislate as may sovereign states which are otherwise wholly unrelated but have a common domain. The principles which control in the exercise of this "concurrent power" by the United States and state are precisely the same principles which apply between sovereign states having a common field of operation for their powers, but which otherwise are wholly independent.

■ This takes us to the propositions before laid down. There can be no conflict between these different laws, except that the same act may constitute two offenses, one against the laws of each sovereign. The conflict may come not between the laws, but, as before stated, in the enforcement, and such conflicts are dealt with on the doctrine of comity. There may be conflict in the sense that the laws are different in their provisions, but the laws themselves will not conflict in the sense that one must yield to the other. If the laws of one sovereign permitted an act under regulations and the other altogether prohibited it, there would be no conflict. Failure to observe the regulations would then be an offense under the one law, but doing the act under compliance with the regulations would be no offense; the doing of the act would itself be an offense under the other law. The only situation under which there would be a conflict would be the imaginable one of one law prohibiting what the other law enjoined. Such a situation will be dealt with should it ever arise. It is not present here. What we have here under the averments of this bill are acts which the state law prohibits, but which the United States law permits in the sense of not prohibiting but regulating them.

■ The real question before us can be best presented by the suppositious case of a law of the United States which prohibited the sale for beverage purposes of a liquor having an alcoholic content of 3 per cent. or more and a state law which voiced a like prohibition of liquor of an alcoholic content of 1 per cent.

A brewer who puts out a 2 per cent. beer might under a regulating law hold a United States permit to deal in it and would clearly be guilty of no offense under any law of the United States; he would however just as clearly be guilty of an offense against the state law. Might he be prosecuted under the latter? The question we think has in principle been settled for us. Even when the laws of the two sovereigns are identical in phraseology so that the same act is an offense against the laws of each, the offender may be prosecuted under each law as for a different offense and thus be twice punished for the same act. Boyhood memories may be revived of punishment inflicted at school and again at home for the same misconduct. The sense of the injustice of this double punishment keenly felt by the boy was not shared by teacher or parent. If there can be made of the same act two different offenses, one against the laws of the United States and the other against the laws of the state, we think it follows that different acts may be made offenses against the laws of either or of each.

We are in full accord with the experienced and ingenious counsel for the plaintiff that the supremacy provision of article 6 of the Constitution embraces the Eighteenth as all other amendments. We do not see, however, that the question of supremacy is raised. The only effect of an amendment is to make it "to all intents and purposes" a part of the Constitution as originally framed. Before the Eighteenth Amendment the field for the operation of prohibition laws was in the sole possession of the states. Since then the United States, as before stated, has merely intruded its presence so that it may likewise legislate. Nothing has been taken from the powers of the states. The laws of the nation and state must each be obeyed and may be enforced. Compliance with one is no claim to exemption from obedience to the other.

Another illustration which is half real and only half suppositious will serve to present the same proposition. Under the National Prohibition Law (27 USCA) permits are issued to brewers to manufacture beer many times exceeding in alcoholic content the allowed volume percentage. This is upon the requirement and expectation that the percentage will be reduced by a process of dealcoholization to the lawful limit. A state law might prohibit such a brew wholly. The proposition we have laid down thus means that a brewer might be punished under the state law for what the United States law permitted in the double sense of not prohibit-

ing it and issuing a permit to do it. We stand, however, by the proposition. It is phrased by the learned counsel for plaintiff in of course an unfriendly, but not in an unfair, way as meaning: "To put it plainly the Commonwealth of Pennsylvania may proceed in this case as if the Volstead Act did not exist." We accept this statement of the proposition, but we are unable to see, as counsel for plaintiff sees, an inconsistency between the doctrine thus laid down and "conclusions" 8 and 9 reached in the Prohibition Case, 253 U. S. 350, 40 S. Ct. 486, 588, 64 L. Ed. 946.

On the contrary, we think the doctrine is in full harmony with these conclusions and with each of them.

We are unable to follow the argument of counsel that the Snyder Act gives no authority to the state officials to interfere with what the plaintiff is doing because the provisions of the Snyder Act have no application. It may be that this is true, but into this we have not gone, because it is for the state courts, and not for us, to decide what is a violation of the state laws, and, if what the defendants are threatening to do is not authorized by the Snyder Act, this court has clearly no jurisdiction to so determine, for the reason that the cause would then be one arising out of the laws of the state, and there is no averment of diversity of citizenship. The sole ground of our jurisdiction is that the case is one arising out of the Constitution and laws of the United States.

This brings us back to the proposition already so many times stated that its repetition may prove tiresome that the Bill is nothing more than a prayer to us to restrain State officers from enforcing State laws. This the averments of the Bill do not call upon us to do.

To give definiteness of date for appellate or other purposes to the decree, none is now made, but the parties have leave to submit a formal decree dismissing the Bill, with costs.